CAYUGA GENERAL TERM, January, 1848.  *Maynard, Welles, and Selden,* Justices.

### GEER and wife *vs.* ARCHER.

A mere moral, or conscientious obligation, unconnected with a prior legal or equitable claim, *is not sufficient to support an express promise.*

An express promise can only revive a precedent good consideration, which might have been enforced at law, through the medium of an implied promise, had it not been suspended by some positive rule of law; but can give no original right of action, if the obligation on which it is founded never could have been enforced at law, though not barred by any legal maxim, or statute provision.

It is not in all cases necessary that the moral obligation, in order to be a good foundation for an express assumpsit, should be such as that, without the express promise, *an action could once have been sustained upon it.*  But if it could have been *made available,* in a defence, it is equally within the rule.

The test is, could it have been enforced before it was barred by the legal maxim, or statutory provision ?

On a motion for a new trial, upon a case, for the misdirection of the judge in his charge to the jury, *it is not necessary that the charge should be excepted to.*  On a *bill of exceptions* the rule is otherwise.

ASSUMPSIT on a promissory note dated October 4, 1836, for $200, made by the defendant, payable to the plaintiff, Eliza Ann Geer, or bearer, four years after date, with interest after two years.  The cause was tried at the Tompkins circuit, before SHANKLAND, justice, on the 27th September, 1847.  On the trial the plaintiffs proved the execution of the note, by Chauncey Pratt, the subscribing witness, and after proving the amount of interest accrued, rested the cause.  The witness Pratt, being called by the defendant's counsel, testified that at the time the note was given, the defendant came to his house to pay the plaintiff, Mrs. Geer, a certain sum of money on a mortgage which she had given her some three or four weeks before.  Mrs. Geer complained that she had not got as much as she ought to have for the land.  Mrs. Archer, the defendant, then said, "If you will be satisfied and contented, and say no more about it, I will give you my note for $200, payable one year after the last instalment of the mortgage becomes

Geer *v.* Archer.

due." The plaintiff, Mrs. Geer, then replied, "I will take it and be satisfied;" whereupon the note in question was given. It further appeared, by the evidence of Pratt, that the defendant, at the time the note was given, paid $400 on the mortgage; that he, the witness, was present when the mortgage was given. At that time the plaintiff, Eliza Ann, said she had sold her land to the defendant, who was to exonerate her from the payment of any part of a certain judgment against John Archer, deceased, the father of the plaintiff, Eliza Ann, and of Nathaniel Archer, deceased, the defendant's late husband; which judgment was originally for something like $5000, but which had been reduced by sheriff's sale to a little over $2000. The plaintiff also said that the defendant was to give her a mortgage for $2000, and a bond with security that no claim should come against her on the judgment. A bond was then drawn, which was executed by the witness and one Marcus D. King, conditioned that the plaintiff, Eliza Ann, should not be called on for any part of the judgment, or any other debt against John Archer, deceased. A bond and mortgage for $2000, and a deed for the land, were thereupon prepared, which were then all executed and exchanged. In addition to the condition of the bond executed by the witness, Pratt, and the said King, as above stated, a clause was inserted, at the request of the plaintiff, that in case she had to foreclose the mortgage, and the land did not sell for enough to pay it, they, (Pratt and King,) would be responsible for the deficiency. The witness, Pratt, had previously paid up the said judgment out of funds in his hands belonging to the estate of the said Nathaniel Archer, deceased. He paid not far from $1500 for it. The witness had had frequent conversations with the plaintiff, Eliza Ann, about taking up the judgment, before it was taken up. The witness did not know that she knew how much had been paid to get it up. The amount paid was not kept secret by the witness, and he thought the plaintiff, Eliza Ann, knew that he was going to get. it for less than was due upon it. She told the witness to go and get up the judgment. On being further examined by the plaintiff's

counsel, the witness, Pratt, testified that he did not know whether the plaintiff, Eliza Ann, was informed that the judgment had been bought up at a discount. The land she sold defendant consisted of 500 acres in Cayuga county, of which she owned one half, or three quarters, and one half of 100 acres in Seneca county. That the witness frequently communicated to the defendant how dissatisfied the plaintiff was. Her principal complaint was that the amount paid for the judgment and what she got for the land, was not as much as she expected to get. She asked $5 an acre for her interest in the Cayuga land, and $25 per acre for that in Seneca county. She said the defendant had not given her as much as she ought. That the defendant's offer for the land was in gross, and when she came to estimate it, it did not come to as much as she expected per acre. The witness thought he had mentioned to the defendant what the plaintiff's complaint was, before the note was given. The defendant made little or no reply to it. At the time the note was given, nothing was said about the price per acre, nor when the mortgage was given. On a re-examination by the defendant's counsel, the witness testified, that he thought he told the defendant that the plaintiff thought she got too little for the land, and that it was less per acre than she expected. That the proposition by the defendant was, to give her so much for the land in gross, and discharge the judgment. The plaintiff did not claim that she had been deceived, or that the defendant had misrepresented any thing. Nothing was said about the judgment, when the note was given. The witness further testified, that the parties differed about the plaintiff's interest in the land. The defendant said the plaintiff owned only half of the lands lying in Cayuga county, and the plaintiff said she owned three quarters of it; but the witness did not specify the time when this difference existed, whether before or after the mortgage was given.

The evidence being closed, the defendant's counsel moved for a nonsuit; which motion was overruled. The cause was then submitted to the jury under the following charge from the court: "The note in question is *prima facie* evidence of a

Geer v. Archer.

consideration to support it; and the weight of evidence is on the defendant to disprove a consideration. But every promise, whether evidenced by parol or writing, must be supported by a good or valuable consideration, or it is void, and cannot be enforced at law. You are to enquire what this note was given for. If the defendant made an offer, in gross, for the land, of so much, and the bargain was consummated on those terms by giving the deed by the plaintiff, and accepting the bond and mortgage of the defendant, without fraud on her part, then the plaintiff cannot recover, although the purchase money did not amount to so much as she had expected. But if the jury believe, from the evidence, that the amount paid for the judgment was designedly kept secret from the plaintiff, and that she was induced to sell her interest for a less price on that account, then the note is valid if given to settle the deficiency occasioned thereby. But the fraud is not to be presumed. It must be proved by facts establishing it. That the plaintiff had sold her interest for less than it was worth, does not furnish a sufficient consideration to support a subsequent promise to pay a further sum; nor would the note be good if the sole consideration to support it, was the plaintiff's ceasing to complain." The jury returned a verdict in favor of the plaintiffs for $335,90, which the defendant's counsel now moved to set aside.

*D. Herron,* for the plaintiffs.

*B. Johnson,* for the defendant.

*By the Court,* WELLES J. From the evidence detailed in the case, it seems quite clear that the only consideration for the note upon which the action is brought, was the difference between the price, or purchase money paid and secured to be paid by the defendant, for the interest of the plaintiff, Eliza Ann Archer, in the land conveyed by her to the defendant, and the amount the said Eliza Ann supposed the land, or her interest in it, was worth, and which she supposed she was receiving at

Geer v. Archer.

a certain sum per acre. The proof is entirely satisfactory to my mind, that the execution of the deed and the bonds and mortgage was a full and fair consummation of the land transaction between the parties, unaccompanied by fraud or concealment. The land was conveyed, the bond and mortgage executed, to secure the purchase money agreed upon, and a further bond executed by Pratt and King to the plaintiff, securing her against ever being called upon for any part of the judgment against John Archer, deceased, and containing the further provision, that in case of a foreclosure of the mortgage, if there should be a deficiency, the obligors would pay it. The plaintiff, Eliza Ann, and the late husband of the defendant, were the children and heirs at law of John Archer, deceased, and as such claimed the land, which was encumbered by the judgment, for a considerable amount. This judgment, the witness, Pratt, as executor of the defendant's husband, had purchased with the moneys of the estate, at a discount of about twenty-five per cent. The defendant proposed to buy the interest of the plaintiff, Eliza Ann, which she was willing to sell, and offered her $2000, besides what had been paid from her husband's estate, for the judgment, and to give her the bond of indemnity mentioned ; which was accepted by the plaintiff, and the papers prepared and executed accordingly. Some three or four weeks after this, the note in question was given by the defendant, to quiet the complaints of the plaintiff, Eliza Ann, in relation to the price of the land. The only witness on the subject, swears that " the plaintiff did not claim that she had been deceived, or that the defendant had misrepresented any thing." The main question is, whether there was a sufficient consideration to support the promise contained in the note.

There is a class of cases where it has been said that a moral obligation is sufficient to support an express promise ; such, for instance, as the obligation to pay a debt barred by the statute of limitations, or an insolvent's discharge, or to pay a debt contracted during infancy, or coverture, and the like. But a mere moral or conscientious obligation, unconnected with a prior legal or equitable claim, is not enough. The result of all the

cases on this head is summed up in a note to 3 *Bos. & Pull.* 249, in these words : "An express promise, therefore, as it should seem, can only revive a precedent good consideration, which might have been enforced at law, through the medium of an implied promise, had it not been suspended by some positive rule of law; but can give no original right of action, if the obligation on which it is founded never could have been enforced at law, though not barred by any legal maxim or statute provision." The rule as thus stated received the emphatic approbation of Justice Spencer in the case of *Smith* v. *Ward,* (13 *John.* 257.) The same doctrine is substantially asserted by Bronson, J., in *Ehle* v. *Judson,* (24 *Wend.* 97 ;) and such I believe to be the settled rule. It forms a criterion at once safe, certain, and easy to be understood and applied. Testing the present case by that rule, it is apparent that the promise cannot be upheld. The supposed obligation which is invoked for its support most clearly never could have been enforced in any tribunal known to our law. The case of *Bently* v. *Morse,* (14 *John. Rep.* 468,) cited by the plaintiff's counsel, was a case of moral obligation sufficient to support an express promise within the rule above referred to. There money had been paid and a receipt taken, and afterwards the party to whom it was paid brought an action for the same money, and recovered, through the omission of the defendant to produce the receipt in evidence in his defence. A subsequent promise by the plaintiff in that action, that if the defendant had the receipt he would refund the money, was held to be valid, and supported by the moral obligation to pay the money. The court likened it to a case of a promise by an infant, to pay a debt contracted during his non-age, or of an insolvent or bankrupt to pay a debt from which he is discharged by his certificate. We hold that it is not in all cases necessary that the moral obligation in order to be a good foundation for an express assumpsit should be such as that, without the express promise, *an action could once have been sustained upon it ;* but that if it could have been *made available* in a defence, it is equally within the rule. The test is, *could it have been enforced* before

Geer *v.* Archer.

it was barred by the legal maxim or statute provision ?   Upon this ground the case of *Bently* v. *Morse* is within the rule stated.

The cases of *Seaman* v. *Seaman,* (12 *Wend.* 383,) and *Russel* v. *Cook,* (3 *Hill,* 504,) also cited by the plaintiff's counsel, were both decided upon a different principle.   In the first, the consideration of the promise was the withdrawing a caveat by an heir at law to proving the will of the ancestor ; in the other, it was the settlement of a doubtful claim.   In both cases the consideration was held good, upon the ground of advantage to the promissor, or damage or inconvenience to the promisee.   Clearly the present does not come within that class of cases, which rests upon an entirely different principle from the cases of moral obligation.

The judge, at the trial, among other things, charged the jury that if they believed, from the evidence, that the amount paid for the judgment was designedly kept secret from the plaintiff, and she was induced to sell her interest for a less price on that account, then the note was valid if given to settle the deficiency occasioned thereby.   Waiving the question as to what would be the effect upon the rights of the parties, on the assumption that there was proof in the case to authorize the jury to find the affirmative of the proposition submitted to them, we think the judge was led into an error in this respect ; for the reason that the case is utterly destitute of evidence to prove a fraudulent concealment, which the jury could with any propriety have taken into consideration.   So far from it, the plaintiff expressly disavows the imputation ; and the case abundantly shows that the note was given simply to appease the querulousness of the plaintiff, and was the merest gratuity.   The question, it is true, was submitted with great caution, and I should infer from the language of the charge, that his honor would have decided the question adversely to what the jury have done ; nevertheless, as I think there was no evidence to go to the jury, on that question, it should not have been submitted to them.

On a motion for a new trial upon a *case,* for the misdirection

of the judge in his charge to the jury, it is not necessary that the charge should be excepted to. The rule is otherwise on a bill of exceptions. Besides, I think the defendant's motion for a nonsuit should have been granted.

For the foregoing reasons there should be a new trial, with costs to abide the event.

New trial granted.