# COUNTY COURT.

CALEB SMITH, appellant, agt. HORACE SILLIMAN, respondent.

A *husband* is not liable for goods purchased by his *wife*, where the *credit* is given, and the goods are charged to the *wife*, without reference to the husband, and without his knowledge or assent, even though some of the articles purchased may have been considered *necessaries* for the wife.

Where a justice of the peace passes upon a question of credit, in such a case, as one of fact, his finding ought not to be disturbed on appeal.

*Saratoga County Court, March Term, 1855.*

THE plaintiff was a dry goods merchant in the city of Troy, Rensselaer county, and had a partner by the name of Bly. They dissolved partnership on the 27th of February, 1854, and

Smith agt. Silliman.

on the same day one Norton entered into partnership with the plaintiff in the same business, which they carried on until September 20th in the same year, when they dissolved.

It is claimed that Bly, at the time of the first, and Norton, at the time of the second dissolution, assigned to the plaintiff his interest in certain accounts of the firm, which the defendant is liable to pay.

The defendant resides in Waterford, in this (Saratoga) county; has a wife, but no children; owns a house and lot worth about $500, is a carpenter by avocation, works by the day or month, and his wife "takes in washing and sewing for a living." From July 28, 1853, to May 27, 1854, the defendant's wife purchased at the stores of Smith, and Bly & Smith, and Norton, several bills of goods, amounting in all to $113.50, on which she had paid $37, leaving a balance due of $76.50. The articles purchased were mostly, if not entirely, such as are used for ladies' wearing apparel, or in making such apparel, and consisted of brocade silk, silks of various kinds and prices, delaines, muslins, mulls, merino, calico, a crape shawl, handkerchiefs, gloves, hose, thread, &c. The accounts were charged to Mrs. C. Silliman.

The plaintiff sued the defendant in a justice's court, to recover the balance of the account. The justice rendered judgment for the defendant.

R. A. PARMENTER, *for the appellant.*

No previous dissent of the defendant to the purchase of the goods was proved. His assent must, therefore, be presumed. (*M'Cutchen* agt. *M'Gahay,* 11 *John.* 281; *Blowers* agt. *Sturtevant,* 4 *Den. R.* 46; *Reave's Domestic Rel.* 79.) But the articles purchased were *necessaries,* and the defendant is liable, whether he assented or dissented. (*Kimball* agt. *Keyes,* 11 *Wend.* 33; *Lockwood* agt. *Thomas,* 12 *John.* 248; *Pomeroy* agt. *Wells,* 8 *Paige,* 486; *Watkins* agt. *Halstead,* 2 *Sandford R.* 311; 2 *Cow. Treatise,* (3d ed.,) 149; *Dunlap's Paley on Agency,* 164,

(*note.*) The credit was to the defendant, but the goods were charged to his wife, because his name was not known.

J. C. ORMSBY, *for the respondent.*

The defendant had no knowledge of the purchase of the articles in question. They were too numerous and expensive for one of his rank and circumstances, and were not necessaries. (3 *Barn. & Cres.* 631; *Comyn's Dig. Title Baron & Feme*, 2.) But even if the articles were necessaries, the credit was given to Mrs. Silliman, and the defendant is not liable. (3 *Campb. Nisi Prius R.* 22, 23; *Shelton* agt. *Hoagly*, 15 *Conn. Rep.* 335; *Leggett* agt. *Reed* 1 *Car. & Payne R.* 16; *Stammus* agt. *Macomb*, 2 *Wend.* 454; 2 *Hill* (*South Car.*) *R.* 335; 2 *U. S. Dig.* 501.)

M'KEAN, County Judge. The assignments of Bly & Norton to the plaintiff are not made a part of the return, but the justice states that they were delivered to the plaintiff at his request. No question, however, is raised as to the sufficiency of those instruments; and it is fair to presume that they were in due form, and that the plaintiff was the sole owner of the accounts upon which the action was brought.

That a husband is liable upon the contracts of his wife, in regard to matters concerning which it has been usual for him to ratify her contracts, and that he is liable for necessaries purchased by her, and is bound to pay for articles which she has bought, when the articles are such as wives in her rank in life usually purchase, are well settled rules of law. In all these cases there is an implied promise on the part of the husband to fulfil his wife's contracts. In the case at bar, there is no proof that the defendant ever ratified any similar contracts of his wife, or that he voluntarily received the benefit of any of the purchases, or even knew of them.

The plaintiff seeks, however, to recover, on the ground that the articles sold were suitable and proper, considering the defendant's rank and condition in life, or were necessaries. But, can it be believed that so large an amount of principally fine

and costly goods purchased in so short a time were necessary or proper, or even becoming for the wife of a man in the defendant's humble, though respectable condition in life? Many of those goods were clearly not necessaries. Still, if a married woman should purchase, at a store, various articles conceded to be necessary, and one or more of an extravagant and unnecessary kind, is the whole demand of the merchant against the husband thereby vitiated? Can he not recover for the necessaries? Has he no remedy? There are authorities which *seem* to say so; but to hold that the husband is not liable at all in such a case, would be to lay down an unjust rule, and " what is not just is not law," or ought not to be. Some of the articles sold by the plaintiff and the assignors must have been necessaries, and for the value of those articles the plaintiff ought to have had judgment, unless there was some other valid objection to a recovery. There is, however, another question to be disposed of. With whom did the plaintiff and his assignors deal in selling the goods in question? With Mrs. Silliman, or with her husband, regarding her as his agent? To whom was the credit given? *Sylvander H. Root* testified, that he was clerk for Smith & Bly, and that Mrs. Silliman's name " was put down through ignorance;" and that the plaintiff inquired for defendant's name, and as to his circumstances *afterwards*. On his cross-examination, this witness said, that the plaintiff asked Mrs. Silliman *her* name, and it was obtained for the purpose of making the charge. " The plaintiff then charged it to her in the book." There is no proof that the plaintiff, or any one else, ever asked her for her husband's name. He asked persons in the store what the defendant's name was, and inquired as to his circumstances; but who they were or where they were from, the witness did not know. This, according to the witness, was after Mrs. Silliman's name was obtained, and the charge made, but how long after, does not appear. The plaintiff was called as a witness by the defendant, and testified that he had known Mrs. Silliman as a customer for some four or five years; that he was formerly a clerk at Quackenbush's, in Troy, and she traded there, and paid for articles

purchased; that after the plaintiff commenced business, she began to trade with him, but paid for her purchases until July 28, 1853. It is not in proof how long this was; but Root was a clerk for Smith & Bly about a year, and they dissolved February 27, 1854.

The plaintiff also testified that he had called on Mrs. Silliman two or three times "about the bill:" did not ask her about her husband: never asked her his name; but inquired about him in the village; that whatever had been done in relation to the bills, had uniformly been done with Mrs. Silliman, and that he never saw the defendant until the day of trial. The first time the plaintiff called on defendant's wife was about a year before the trial, and consequently was about December, 1853. In January and May, 1854, the other bills of goods, consisting mostly of fine and valuable articles, were sold to her. In September and December, 1853, and in May, 1854, she made payments amounting to some $37.

To whom, then, was the credit given? The plaintiff knew Mrs. Silliman at Quackenbush's, and at his own store, for four or five years, as a paying customer. Finally, she desires to trade on credit. He knows nothing about her husband, or his circumstances; nor does he seem desirous to know. He asks for *her* name, obtains it, and makes the charges to her. Would it not have been just as easy, and much more proper, to have asked her for her husband's name, if it was intended to give him the credit. The husband is never spoken to upon the subject, nor is his name ever mentioned to his wife. But *she* is several times called upon in reference to the bills; *she* makes payments, and is sold other goods.

The credit would clearly seem to have been given, not to the defendant, but to his wife; and having been once given to her, the plaintiff cannot now change it, so as to make the defendant liable. The court below passed upon the question of credit as one of fact. This court cannot disturb that finding; nor does the case induce a belief that the justice ought to have found otherwise.

The judgment is affirmed, with costs.