A natural or moral obligation is one which cannot be enforced by action, but which is binding on the party who incurs it, in conscience and according to natural justice. (2 Bouv., 200.) And the instance of such an obligation is given, as when the action upon the contract is barred by the statute of limitations, a natural or moral obligation still subsists, although the civil obligation is extinguished. A natural obligation is a sufficient consideration for a new promise. (5 Binn., 33; 2 id., 591; Yelv., 41, a.n. 1; Cow., 289; 2 Bl. Com., 445; 3 B. P., 249, n.; 2 East., 506; 3 Taunt., 311; 5 id., 36; Yelv., 41, 6 n.; 3 Pick., 207, and other cases hereinafter referred to.)
The very able note to Wennall v. Adney (3 Bos. P., 249), contains a review of all the cases, and a criticism upon the decision of Lord MANSFIELD, and the writer says that the instances adduced by him as illustrative of the rule of law, do not carry that rule beyond what the older authorities seem to recognize as its proper limits, for in each instance the party bound by the promise, had received a benefit previous to the promise. Indeed, it is said, it seems that in such instances alone will an express promise have any operation, and there it only becomes necessary because though the consideration was originally beneficial to the party promising, yet inasmuch as *Page 613 
he was not of a capacity to bind himself when he received the benefit, or is protected from liability by some statute provision or some stubborn rule of law, the law will not as in ordinary cases imply an assumpsit against him. Again, it is remarked that Lord MANSFIELD appears to have used the term moral obligation, not as expressive of any vague and undefined claim arising from nearness of relationship, but of those imperative duties which would be enforceable by law, were it not for some positive rule, which with a view to general benefit exempts the party in that particular instance from legal liability. Were it not for the legal disability in the party making the contract at the time it was so made, the law would imply a promise. But by reason of such disability the contract cannot be enforced unless there be an express promise to fulfill, after the disability ceases. And the moral obligation thus to perform the contract made under disability, has been held to be a good consideration to support the express promise. Thus, Judge BRONSON said, in Ehle v.Judson (24 Wend., 97), that the moral obligation to pay a debt barred by the statute of limitations or an insolvent discharge, or to pay a debt contracted during infancy or coverture, and the like, will be a good consideration for an express promise. But a merely moral or conscientious obligation unconnected with any prior legal or equitable claims, is not enough. The doctrine thus laid down and stated with great precision and accuracy is fully sustained by the authorities. BULLER, J., in Hawkes v.Saunders (Cowp., 289), says, the point is whether an obligation in justice, equity and good conscience, to pay a sum of money, be or be not a sufficient consideration in point of law, to support a promise to pay that sum? If such a question, he says, were stripped of all authority, it would be resolved by inquiring whether law were a rule of justice, or whether it were something that acts in direct contradiction to justice, conscience and equity. He says the matter has been repeatedly decided and refers to numerous authorities.
In Bonner v. Hedley (2 Taunt., 184), a promise to pay a void and usurious debt was held binding on the party making it; *Page 614 
and although the promisor was not and never had been under any legal obligation to pay the debt, yet it was held that in conscience and equity he was bound to pay the money actually borrowed, and that such moral obligation formed a good consideration for a promise to pay it.
Lee v. Muggeridge (5 Taunt., 35), is a case often referred to, and was regarded as a controlling authority until a late period, when its soundness has been in some degree questioned. There a feme covert, having a separate estate, gave a bond for the repayment by her executors of a certain sum of money advanced at her request on the security of that bond to her son-in-law. After her husband's decease, she wrote promising that her executors should settle the bond. It was held that assumpsit would lie against the executors upon the promise of their testatrix. MANSFIELD, Ch. J., said that it had long been established that where a person is bound morally and conscientiously to pay a debt, though not legally bound, a subsequent promise to pay will give a right of action. And the judges say that the case is not distinguishable from Bonner v.Hedley (supra): that in that case certainly Hedley was never for a moment legally bound to pay a farthing of that money for which he was sued. Bentley v. Morse (14 Johns., 468), is a case similar in principle to Hedley v. Bonner. In that case a debt had been paid and a receipt taken therefor, as evidence of the payment. A suit was brought to recover the same debt, and the receipt not being produced a recovery was had, and the amount paid the second time. There was, therefore, no legal liability on the part of the creditor to refund the money, but a moral and conscientious obligation to do so, as he had no claim morally to the money paid the second time. It was held that a promise to repay on production of the receipt, was founded on a good consideration.
The Court says, "The debt having been paid, the recovery in the former action was clearly unjust. And though in consequence of his neglect the defendant in error lost all legal remedy to recover back his money, yet there was such a moral obligation on the part of the plaintiff in error to refund the *Page 615 
money, as would be a good consideration to support an assumpsit, or express promise to pay it. The moral obligation is as strong as any in the cases in which it has been held sufficient to revive a debt barred by statute or some positive rule of law. It is like the promise of an infant to pay a debt contracted during his non-age, or of an insolvent or bankrupt to pay a debt from which he is discharged by his certificate. Littlefield v.Shee, 2 Barn. Ad., 811, was decided in 1831, and on the ground that in that case the debt which the wife promised to pay after she became discovert, was the debt of her husband, and that she was under no moral obligation to pay the same. Butcher's meat had been furnished to the wife for the space of about six months, while her husband was absent abroad, and after his death she promised to pay it. Lord TENTERDEN held that the plaintiff had failed to show that he had supplied the defendant with the meat, but that it appeared it was furnished to her while her husband was living, so that the price constituted a debt due from him. They were, therefore, of the opinion that the declaration was not supported by the proof, and the nonsuit was right. Lee andMuggeridge is referred to, and it is remarked that all the circumstances in that case showed that the money was in conscience due from the defendant. In Eastwood v. Kenyon (11 Adol. Ellis), 438, the broad doctrine assumed to be laid down in Lee v. Muggeridge, is criticized by Lord DENMAN, and it is said that that doctrine would annihilate the necessity for any consideration at all, inasmuch as the mere fact of giving a promise creates a moral obligation to perform it. And he quotes with approbation the note to Wennall v. Adney, supra, "that an express promise can only revive a precedent good consideration, which might have been enforced at law through the medium of an implied promise, had it not been suspended by some positive rule of law; but can give no original cause of action, if the obligation on which it is founded never could have been so enforced at law, though not barred by any legal maxim or statute provision. And he thought the case of Barnes v. Hedley, was fully consistent *Page 616 
with the doctrine of this note. Watkins v. Halstead (2 Sand. S.C.), was a case of goods sold under such circumstances that the husband was clearly liable for them, and that no moral obligation rested upon the wife to pay for them. The promise after she was divorced from her husband to pay for them, was but a promise to pay the debt of another person; and the court held, followingLittlefield v. Shee, that there was no good consideration to support the promise. I should judge from the statement of the case that the goods were originally charged to the husband and sold on his credit, with the understanding that if he did not pay for them, the wife would.
Geer and Wife v. Archer (2 Barb. S.C., 420), was a case when it was held that a mere moral or conscientious obligation, unconnected with a prior legal or equitable claim, is not sufficient to support an express promise, and the rule as laid down in the note in Bos. Pull. (supra), is cited as containing the true test.
In the present case, can there be any doubt, but that the defendant, if she had been a single woman, would have been under both legal and equitable obligation to pay for these goods? The law would have raised, in that event, an implied promise to pay for them; an express promise therefore, revived a precedent good consideration, which might have been enforced at law through the medium of an implied promise. The inability of the wife to contract, is precisely the same as that of an infant, and cannot be distinguished from it. If a sale and delivery of goods to an infant, imposed a moral obligation upon him to pay for them, it is not perceived why a sale and delivery of goods to a married woman, as in the present case, solely on her credit and responsibility, she being a trader, doing business in her own name, and for her own personal benefit and advantage, and holding herself out as an unmarried woman, does not impose upon her the same moral obligation to pay for them. This case is distinguishable therefore, from those of Littlefield and Shee,
and Watkins v. Halstead, in that the debt in the present case, was never that of the husband. The wife here was a sole and separate trader, on *Page 617 
her own account and for her own personal advantage, and not by permission of the husband. He was not therefore liable for the debts contracted by her, neither would the property so purchased by her, be liable to the payment of his debts. (Sherman v.Elder, decided at March term, 1862, 24 N.Y., 381; 2 Bright. on Husband and Wife, p. 300, Smith v. Silliman, 11 How. Pr., 368.) This is not in conflict with the case of Lovett v.Robinson (7 How. Pr., 105), as that case was put on the ground that the wife was living and cohabiting with the husband, and it was held there that the goods then purchased by her, became those of her husband, and the title thereto was vested in him.
It follows from these views, that the debt referred to in the complaint, under the circumstances therein detailed, was not the debt of the defendant's husband, but that morally and equitably, she ought to pay the same. That but for the rule of law, prohibiting a feme covert from entering into or making a legal contract, the law would have implied a promise on her part to pay for the same, and that after such disability ceased she having made an express promise to pay the price of such goods, the moral obligation or duty resting on her, to make such payment, formed a good consideration for such promise, and she is consequently liable to pay for the same. The judgment of the Supreme Court should therefore be reversed, and judgment should be given for the plaintiff on the demurrer, with costs.