Balcom, J.
As this action was commenced in 1857, it muss be determined by the rules of the common law, irrespective of the alterations made by our recent statutes in the laws affecting husband and wife.
It cannot be said that the husband of the defendant was ever liable ex contractu to pay for the goods. They were not necessaries, and there is no allegation in the complaint that he knew of the purchase of the goods by his wife, or that they ever came to his possession.
There was, therefore, no implied promise on the part of the husband to pay for the goods. Story says: “ If credit be given solely to the wife, the husband is not liable, although they live together, and although he see her in possession of the goods bought. If, therefore, the tradesman should take her promis *598 sory note in payment, which would plainly indicate a reliance on her personal credit, the husband would not be liable for the price of the goods, nor on the note, nor need he prove that the goods were not necessaries.” (Story on Contracts, 4th ed., § 103; 2 Bright, on Husb, and Wife, 17, 18.)
But the vendors could have maintained an action against the defendant and her husband jointly in the lifetime of the latter to recover possession of the goods, or for a conversion thereof by the former, on the ground that the goods were fraudulently obtained by the wife by falsely holding herself out to be unmarried and doing business as a trader in her own name and for her own personal benefit and advantage; and I will not say but an action on the case for damages for the fraud would have lain against the husband and wife jointly. Kent says: “ The husband is liable for the torts and frauds of the wife, committed during coverture. If committed in his company or by his order, he alone is liable. If not they are jointly liable, and the wife must be joined with the husband." (2 Kent’s Com., 9th ed., 138; 2 Bright. on Husband and Wife, 79, 80; 1 Story on Con., 4th ed., § 109; Reeve’s Dom. Rel., 2d ed., 72, 73.) By reason of the fraud of the wife the title to the goods remained in the vendors, and the possession or conversion thereof by the wife was wrongful. (Cary v. Hotailing, 1 Hill, 311; Nichols v. Michael, 23 N. Y., 264.) Hence the right of the vendors to maintain either of the actions formerly called replevin and trover for the goods.
When the wife commits a tort by order of her husband, or in company with him, he alone is liable; and in case of his death, the cause of action does not survive against the wife. (Reeve’s Dom. Rel., 2d ed., 72.) But if the tort be not committed in the presence of the husband, or by his order or request, the wife is also liable and must be joined in the suit with her husband. The wrong is in such a case considered as her wrong, and the husband is answerable with the wife, for a similar reason to that of his liability for her contracts before marriage. (Reeve’s Dom. Rel., 2d ed., 72.) I am of the opinion, a cause of action for such a wrong survives against the wife on the death of her husband. *599 It was held by Lord Ellenborouh in Woodman v. Chapman, (1 Camp., 189), that a debt contracted by the'wife before marriage, survives against her, upon the death of her husband; and such holding was undoubtedly correct. It is laid down by Macqueen on Husband and Wife, (Law Library, 4th series, vol. 34, p. 123), that “causes of action survive against-the wife, which accrued during the coverture in respect of her real estate, or for any personal wrongs done by her when sole.” The only authority cited by him for this rule is the note by Lord Campbell to the above case of Woodman v. Chapman, and the language of that is, that “ causes of action survive to the wife, which accrued during the coverture in respect of her real estate or for any personal wrong done her.” But whether the doctrine laid down by Macqueen is or is not supported by the authority cited by him, it rests upon the same principle that makes the debts of the wife contracted before her marriage, which are not recovered of the husband and wife during the life of the former, survive against the latter, and therefore is good law. The personal representatives of the husband cannot be charged with such debts; and on similar principles they must be exempted from liability for torts of the wife committed in the absence of her husband, and not in his business, and without his concurrence or knowledge; for such torts, as has already been seen, are considered her torts. (Cox v. Kitchin, 1 Bos. & Pull., 338.)
The only authority I have found, which seems to militate against any of the foregoing conclusions, is the decision of the Court of Exchequer in Fairhurst & Wife v. The Liverpool Adelphi Loan Association (26 Eng. Law and Eq., 393), where it was held that an action will not lie against á husband and wife, for a false and fraudulent representation by the wife to the plaintiffs, that she was sole and unmarried, at the time of her signing a promissory note as surety to them for a third person, whereby they were induced to advance a sum of money to that person. The opinion of Judge Reeve is to the contrary. (Reeve’s Dom. Rel., 2d ed., 72, 73.) But if the decision of the Court of Exchequer be correct, it is placed on the same ground *600 on which an infant is exempted from liability for damages in actions for wrongs, when founded on contract; and when goods are sold to an infant on credit, and he avails himself of his infancy to avoid payment, the vendor may reclaim the goods as having never parted with his property in them. (Badger v. Phinney, 15 Mass., 359.) Either what was formerly called trover or replevin, may be maintained for the goods in such a case. (Wallace v. Morss, 5 Hill, 391.) In such a case the action is . brought in disaffirmance of the contract, and on the ground that the vendor still retains the title to the goods. Upon the same principle, either an action to recover possession or one for conversion could have been maintained against the defendant and her husband for the goods sold to the former in this case. And should we concede that .thé vendors could not have recovered in an action against them for damages merely, for the fraud of the wife in obtaining the goods, there still remained two kinds of action, either of which could have been maintained against her as well as her husband; and the cause, therefor, survived against the defendant on the death of her husband.
If these views are correct, the promise of the defendant after the death of her husband to pay for the goods, and to pay the notes given for them, was an undertaking by her to pay, a demand for which a cause of action existed against her, -from the time she purchased the goods, and therefore was founded on a good and sufficient consideration, and is clearly obligatory upon her.
There is another view of the case which shows the promise ■ of the defendant to pay for the goods and pay the notes she gave therefor, was founded upon a sufficient consideration. .
I am aware the general rule is that a moral obligation is not alone a sufficient legal consideration to support a promise. (1 Story on Cont., 4th ed., §§ 465-469; Chitty on Cont., 9th Am. ed., pp. 48, 49; 24 Wend., 97; 1 Hill, 532; 5 id., 306.) And the Superior Court of New York City went so far in Watkins v. Halstead (2 Sand. S. C., 311), which case was followed by the Supreme Court in 1^his, as to adopt the language of a note to Wennall v. Adney (3 Bos. & Pul., 252), where it was.said that *601 “ an express promise can only revive a precedent good consideration, which might have been enforced at law through the medium of an implied promise, had it not been suspended by some positive rule of law; but can give no original right of action, if the obligation on which it is founded never could have been enforced at law, though not. barred by any legal maxim or statute provision.” But this rule is too broad, or at least there are exceptions to it. For there are cases where a moral obligation, that is founded upon an antecedent valuable consideration is sufficient to sustain a promise, though the obligation on which it is founded, never could have been enforced at law. In other words, a moral obligation is sometimes a sufficient consideration for an express promise, if at some time or other, a good or valuable consideration has existed, although there never was a time prior to such express promise when any portion of the precedent consideration could have been enforced at law or in equity through the medium of any promise. To illustrate: If money be loaned upon usury, and usurious security taken therefor, such security is absolutely void and no action can be maintained upon it; nor is it evidence of an indebtedness, upon the strength of which the law will imply a promise on the part of the borrower, to repay the amount actually received by him. The express contract being absolutely void, no implied obligation can spring from it. The lender cannot waive or- abandon the usurious agreement so far as it is illegal, and enforce it for the residue. The contract is one; no matter what the nature or numbers of the securities may be, all are void. The contract cannot be broken up and resolved into its original parts or elements, so as to get rid of the illegal taint, without the consent of both parties. But if it is mutually abandoned, and the securities are canceled or destroyed, so that they can never be made the foundation of an action, and the borrower subsequently promise to pay the amount actually received by him, such promise is legal and binding. It is founded upon an equitable and moral obligation, which is sufficient to support an express promise. • The money actually lent when legally separated from the usurious premium, is a *602 debt in equity and conscience, and ought to be repaid. (Per Sutherland, J., in Hammond v. Hopping, 13 Wend., 511, 512; Miller v. Hull, 4 Denio, 104; Chitty on Cont., 9th Am, ed., 712, 713; 1 Story on Cont., 4th ed., § 603; 2 Pars. on Con., 3d ed., 397; Parson’s Mercantile Law, 257; Barnes v. Headly, 2 Taunt., 184.)
In Lee v. Muggeridge (5 Taunt., 35), a feme covert, having an estate settled to her separate use, gave a bond for repayment, by her executors, of money advanced at her request, on security of that bond, to her son-in-law; and after her husband’s decease, she' wrote, promising that her executors should settle the bond, and it was held that assumpsit would lie against the executors on such promise of the testatrix. That case was not .overruled by the decision in Meyer v. Haworth (8 Adol. & Ellis, 467); though it must be conceded it was very much weakened as an authority in England, by Eastwood v. Kenyon. (11 Adol. & Ellis, 438.) And Littlefield, Executrix, &c., v. Shee (2 Barn. & Adol, 811), was put mainly upon the ground that the price of the goods originally constituted a debt from the husband, though Lord Tenterden in deciding it said he must also observe, “ that the doctrine, that a moral obligation is a sufficient consideration for a subsequent promise, is one which should be received with some limitation.” Lee v. Muggeridge has never been overruled in this State. Smith v. Wane (13 Johns., 257), does not do it; for that, was a case to recover back money the plaintiff had paid the defendant for land, the former claiming there was a deficiency in the number of acres; and Judge Spencer, in delivering the opinion of the court, said: “ It cannot be pretended that the defendant was under any moral obligation to pay for the deficiency in quantity of land sold and conveyed to the plaintiff.” All that was decided in Ehle v. Judson (24 Wend., 97), was that a mere moral or conscientious obligation, unconnected with a prior legal or equitable claim, is not a sufficient consideration to support a promise; and Judge Bronson, who gave the opinion of the - court, said: “ The moral obligation to pay a debt barred by the statute of limitation, or an insolvent’s discharge, or to pay a debt *603 contracted during infancy or coverture "and the like, "will be a good consideration for an express promise.” In Wilson v. Burr (25 Wend., 386), it was held the plaintiff would recover his claim of $200, counsel fees; and the- court said: “ It is true, at the time of the retainer the defendant was a feme covert; but-she was soon after divorced, and it is to be presumed subsequently recognized the services rendered.”
There are some, perhaps many, broad assertions in our reports going to show that the promise of the defendant in this case is not obligatory; and the reasoning tends that way in the following cases: (Geer and Wife v. Archer, 2 Barb., 420; Nash v. Russell, 5 id., 556; and Ingraham v. Gilbert, 20 id., 151.) But there are equally broad expressions in our reports the other way; and the reasoning in such case's as Doty v. Wilson (14 Johns., 378), and others I might mention, certainly tends to the conclusion that such promise is binding, as, in justice, it clearly ought to be.
The goods were sold and delivered by the vendors with -the expectation on their part, that they would receive pay for the same, and upon the defendant’s express promise that she would pay for them, -and under such circumstances that the vendors had no claim therefor against her husband. The goods were valuable and the defendant personally received the benefit of them; and the price she agreed to pay therefor, is a debt which, “ in equity and conscience,” she ought to pay. In other words, she ought in conimon honesty to pay for the goods. Her promise so to do was made for value actually received by her personally; and it was to discharge a moral obligation founded upon an antecedent valuable consideration, created for her own personal benefit, and at her special instance and request; and I am of the opinion the law makes such promise obligatory upon her.
It seems to me that the defendant’s moral obligation to pay this debt is so interwoven with equities as to furnish a good consideration both upon principle and authority for her promise to pay it. I will add that the fact is controlling with me, that the defendant personally received a valuable consideration for *604 the money she has promised to pay, and this distinguishes the case from some that seem to weigh against the conclusion that the defendant’s promise is valid.
It is unnecessary to notice any of the recent changes made . by the Legislature in the law, • affecting husband and wife as they are all inapplicable to, the case, which must be determined as the law was when the alleged cause of action accrued.
For the foregoing reasons, I am of the opinion the complaint states facts sufficient to constitute a cause of action, and that the judgment of the Supreme Court should be reversed, and judgment given for the plaintiff on the demurrer with costs; but with liberty to the defendant to apply to the Supreme Court for leave to answer on terms.
Davies, J.
A natural or moral obligation is one which cannot be enforced by action, but which is binding on the party who incurs it, in conscience and according to natural justice. (2 Bouv., 200.) And the instance of such an obligation is given, as when the action upon the contract is barred by the statute of limitations, a natural or moral obligation still subsists, although the civil obligation is- extinguished. A natural obligation is a sufficient consideration for a new promise. (5 Binn., 33; 2 id., 591; Yelv., 41, a. n. 1; Cow., 289; 2 Bl. Com., 445; 3 B. & P., 249, n.; 2 East., 506; 3 Taunt, 311; 5 id., 36; Yelv., 41, 6 n.; 3 Pick., 207, and other cases hereinafter referred to.)
The very able note to Wennall v. Adney (3 Bos. & P., 249), contains a review of all the cases, and a criticism upon the decision of Lord Mansfield, and the writer says that the instances adduced by him as illustrative of the rule of law, do not carry that rule beyond what the older authorities seem to recognize as its proper limits, for in each instance the party bound by the promise, had received a benefit previous to the promise.- Indeed, it is' said, it seems that in such instances alone will an express promise have any operation, and there it only becomes necessary because though the consideration was originally beneficial to the party promising, yet inasmuch as *605 he was not of a capacity to bind himself when he received the benefit, or is protected from liability by some statute provision or some stubborn rule of law, the law will not as in ordinary cases imply an assumpsit against him. Again, it is remarked that Lord Mansfield appears to have used the term moral obligation, not as expressive of any vague and undefined claim arising from nearness of relationship, but of those imperative duties which would be enforceable by law, were it not for some positive rule, which with a view to general benefit exempts the party in that particular instance from legal liability. Were it not for the legal disability in the party making the contract at the time it was so made, the law would imply a promise. But by reason of such disability the contract cannot be enforced unless there be an express promise to fulfill, after the disability ceases. And the moral obligation thus to perform the contract made under disability, has been held to be a good consideration to support the express promise. Thus, Judge Bronson said, in Ehle v. Judson (24 Wend., 97), that the moral obligation to pay a debt barred by the statute of limitations or an insolvent discharge, or to pay a debt contracted during infancy or coverture, and the like, will be a good consideration for an express promise. But a merely moral or conscientious obligation unconnected with any prior legal or equitable claims, is not enough. The doctrine' thus laid down and stated with great precision and accuracy is fully sustained by the authorities. Buller, J., in Hawkes v. Saunders (Cowp., 289), says, the point is whether an obligation in justice, equity and good conscience, to pay a sum of money, be or be not a sufficient consideration in point of law, to support a promise to pay that sum? If such a question, he says, were stripped of all authority, it would be resolved by inquiring whether law were a rule of justice, or whether it were something that acts in direct contradiction to justice, conscience and equity. He says the matter has been repeatedly decided and refers to numerous authorities.
In Bonner v. Hedley (2 Taunt., 184), a promise to pay a void and usurious debt was held binding on the party making it; *606 and although the promisor was not and never had been under any legal obligation to pay the debt, yet it was held that in conscience and equity he was bound to pay the money actually borrowed, and that such moral obligation formed a good consideration for a promise to pay it.
Lee v. Muggeridge (5 Taunt., 35), is a case often referred to, and was regarded as a controlling authority until a late period, when its soundness has been in some degree questioned. There a feme covert, having a separate estate, gave a bond for the repayment by her executors of a certain sum of money advanced at her request on the security of that bond to her son-isslasr. After her husband’s decease, „she wrote promising that her executors should settle the bond. It was held that assumpsit would lie against the executors upon the promise of their testatrix. Mansfield, Ch. J., said that it had long been established that where a person is bound morally and conscientiously to pay a debt, though not legally bound, a subsequent promise to pay will give a right of action. And the judges say that the case is not distinguishable from Bonner v. Hedley (supra): that in that case certainly Hedley was never for a moment legally bound to pay a farthing of that money for which he was sued. Bentley v. Morse (14 Johns., 468), is a case similar m principle to Hedley v. Bonner. In that case a debt had been paid and a receipt taken therefor, as evidence of the payment. A suit was brought to recover the same debt, and the receipt not-being produced a recovery was had, and the amount paid the second time. There was, therefore, no legal liability on the- part of the creditor to refund the money, but a moral and conscientious obligation to do so, as he had no claim morally to the money paid the second time. It was held that a promise to repay on production of the receipt, was founded on a good consideration.
The Court says, “ The debt having been paid, the recovery in the former action was clearly unjust. And though in consequence of his neglect the defendant in error lost all legal remedy to recover back his money, yet there was such a moral obligation on the part of the plaintiff in error to refund the *607 money, as would be a good consideration to support an assumpsit, or express promise to pay it. The moral obligation is as strong as any in the cases in which it has been held sufficient to revive a debt barred by statute or some positive rule of law. It is like the promise of an infant to pay a debt contracted during his non-age, or of an insolvent or bankrupt to pay a debt from which he is discharged by his certificate. Littlefield v. Shee, 2 Barn. & Ad., 811, was decided in 1831, and on the ground that in that case the debt which the wife promised to pay after she became discovert, was thd debt of her husband, and that she was under no moral obligation to pay the same. Butcher’s meat had been furnished to the wife for the space of about six months, while her husband was absent abroad, and after his death she promised to pay it. Lord TEMTERDEEr held that the plaintiff had failed to show that he had supplied the defendant with the meat, but that it appeared it was furnished to her while her husband was living, so that the price constituted a debt due from him. They were, therefore, of the opinion that the declaration was not supported by the proof, and the nonsuit was right." Lee and Muggeridge is referred to, and it is remarked that all the circumstances in that case showed that the money was .in conscience due from the defendant. In Eastwood v. Kenyon (11 Adol. & Ellis), 438, the broad doctrine assumed to be laid down in Lee v. Muggeridge, is criticized by Lord DEMAN, and it is said that that doctrine would annihilate the necessity for any consideration at all, inasmuch as the mere fact of giving a promise creates a moral obligation to perform it. And he quotes with approbation the note to Wennall v. Adney, supra, “ that an express promise can only revive a precedent good consideration, which might have been enforced at law through the medium of an implied promise, had it not been .suspended by some positive, rule of law; but can give no original cause of action, if the obligation on which it is founded never could have been so enforced at law, though not barred by any legal maxim or statute provision. And he thought the case of Barnes v. Hedley, was fully consistent *608 with the doctrine of this note. Watkins v. Halstead (2 Sand. S. C.), was a case of goods sold under such circumstances that ‘the husband was clearly liable for them, and that no moral obligation rested upon the wife to pay for them. The promise after she was divorced from her husband to pay for them, was but a promise to pay the debt of another person ; and the court held, following Littlefield v. Shee, that there was no good consideration to support the promise. I should judge from the statement of the case that the goods were originally charged to the husband and sold on his credit, with the understanding that if he did not pay for them, the wife would.
Geer and Wife v. Archer (2 Barb. S. C., 420), was a case when it was held that a mere moral or conscientious obligation, unconnected with a.prior legal or equitable claim, is not sufficient to support an express promise, and the rule as laid down in the note in Bos. & Pull. (supra), is cited as containing the true test.
In the present case, can there be any doubt, but that the defendant, if she had been a single, woman, would have been under both legal and equitable obligation to pay for these goods ? The law would have raised, in that event, an implied promise to pay for them; an express promise therefore, revived a precedent good consideration, which might have been enforced at law through the médium of an implied promise. The inability of the wife to contract, is precisely the same as that of an infant, and cannot be distinguished from it. If a sale and delivery of goods to an infant, imposed a moral obligation upon him to pay for them, it is not perceived why a sale and delivery of goods to a married woman, as in the present case, solely on her credit and responsibility, she being a trader, doing business in her own name, and for her own personal benefit and advantage, and holding herself out as an unmarried woman, does not impose upon her the same moral obligation to pay for them. This case is distinguishable therefore, from those of Littlefield and Shee, and Watkins v. Halstead, in that the debt in the present case, was never that of the husband. The wife here was a sole and separate trader, on *609 her own account and for her own personal advantage, and not by permission of the husband. He was not therefore liable for the debts contracted by her, neither would the property so purchased by her, be liable to the payment of his debts. (Sherman v. Elder, decided at March term, 1862, 24 N. Y., 381; 2 Bright. on Husband and Wife, p. 300, Smith v. Silliman, 11 How. Pr., 368.) This is not in conflict .with the case of Lovett v. Robinson (7 How. Pr., 105), as that case was put on the ground that the wife was living and cohabiting with the husband, and it was held there that the goods then purchased by .her, became those of her husband, and the title thereto was vested in him.
It follows from these views, that the debt referred to in the complaint, under the circumstances therein detailed, was not the debt of the defendant’s husband, but that morally and equitably, she ought to pay the same. That but for the rule of law, prohibiting a feme covert from entering into or making a legal contract, the law would have implied a promise on her part to pay for the same, and that after such disability ceased she having made an express promise to pay the price of such goods, the moral obligation or duty resting on her, to make such payment, formed a good consideration for such promise, and she is consequently liable to pay for the same. ■ The judgment of the Supreme Court should therefore be reversed, and judgment should be given for the plaintiff on the demurrer, with costs.
Emott, J.
The action of the plaintiff must, of course, rest •upon the express promise of the defendant, made after her coverture ended, to pay the debts, or the notes which represent them. The question js whether the previous sale and delivery of the goods to the defendant during coverture was a sufficient consideration to sustain the promise. The authorities upon the subject of a promise by a married woman after coverture to pay a debt incurred or an obligation given by her during coverture are not uniform either in their reasoning or their conclusions. One of the earliest cases is Lloyd v. Lee (1 Strange, 94), where *610 a married woman, gave a note as a feme sole, and after her husband’s death promised to pay it. It was held that the note was void, -and forbearance to sue it constituted no consideration for a promise to pay it. It will be observed that there is nothing in this case to show what was the original consideration of the note. On the other hand, in Lee v. Muggeridge (5 Taunt., 35), a married woman gave- a bond, while married, to a person for money advanced by him to her son-in-law at her request. After her husband’s death she promised to pay that bond, and assumpsit was sustained upon that promise. The language of Sir Jambs Mansfield, and of all the other judges of the .Court of Common Pleas, was very strong in this case to the sufficiency of a mere moral obligation as a consideration for a subsequent promise. But this language has been questioned, and the authority of the decision weakened, by the later English authorities. Thus in Littlefield v. Shee (2 B. & A., 811), Lord Tenterden, delivering the judgment of the Court of King’s Bench, held that a promise by a married woman to pay for goods which had been previously supplied to her during coverture was void, because the goods were in law supplied to her husband, and the price was a debt from him, not her. Lord Tentebden observed in his judgment that the doctrine that a moral obligation is a sufficient consideration for a subsequent promise, is one that should be taken with some limitation. Again in Meyer v. Haworth (8 A. & E., 467), Lord Denman and all the other judges of the King’s Bench adhered to this doctrine upon demurrer in a similar case. The Lord Ch. Justice said: “ The record states that goods were supplied to a married woman who, after her husband’s death, promised to pay. This is not sufficient. The debt was never owing from her.” The cases were again, adverted to, and the law upon the subject of a moral obligation as a consideration for a promise, discussed at some length by Lord Denman, in Eastwood v. Kenyon (11 A. & E., 438). The action there was against the husband of a woman who had inherited lands. The plaintiff had voluntarily ' expended money in the improvement of the lands, while she was sole and an infant. After she came of age she assented to *611 it, and promised to pay the account, and after marriage the defendant assented to the account, and promised to repay the plaintiff, and the suit was brought on this express promise. It was held that the consideration shown was past and executed, and not at the request of the defendant or of his wife, and therefore was a mere voluntary courtesy and would not sustain the action. The case of Lee v. Muggeridge was again questioned in this judgment. In our own courts there are dicta in many cases to the effect that the moral obligation to pay a debt com' tracted during coverture will be a sufficient consideration for an express promise after the disability is removed. (24 Wend., 99; 25 id., 386-388.) The question, however, was never distinctly presented, as far as I am avfare, until the case of Watkins v. Halstead (2 Sand. S. C., 311), where it was determined by the Supérior Court of New York adversely to the doctrine advanced by the plaintiff. The decision is approved by Parsons, in his work on Contracts (vol. 1, pp. 358-361), and was followed by the court below in this case..
There is a distinction taken in some of the cases between obligations which are void, and such as are only voidable, and it is said that where the original undertaking was void, it cannot form the basis or consideration for a new promise, although it may where it is only voidable. Thus, in Meyer v. Haworth (8 A. & E., 467), Patterswon, J., says, speaking of a supposed promise of the defendant while a married woman, upon the. sale of the goods: “Such promise was not like that of an infant voidable, but was void.” This distinction, however, applied to the original express contract alone, when there is one, will not explain all the cases. Thus, where money is lent upon an usurious contract which is totally void, yet, if the borrower subsequently promise to repay the money, that promise will be enforced by the courts. (2 Taunt., 182; 19 John., 147.) On the other hand, where a creditor obtained from the debtor a promissory note for the residue of his demand, as a condition of his joining with the other creditors in a composition deed acknowledging satisfaction by the receipt of a part of their debts, the note is void in law as a fraud upon the other creditors, *612 and a subsequent promise to pay it was held without conside-. ration. (2 T. R., 763.).
Where the original contract or promise is in itself the whole consideration upon which'the new promise rests, the distinction which has now been adverted to is. sufficient to dispose of the case. If that contract was wholly void, it alone will not sustain a subsequent promise to fulfill it. Thus, in Lloyd v. Lee (1 Strange, 94), already quoted, the new promise of the defendant rested entirely.upon her having given a note during coverture. This note was void; and as there was no proof of any other consideration, either for the note or the new promise, the action was not sustained. But where there is, beyond or before the void security or agreement, a moral obligation or duty, arising from benefit received or otherwise, which would raise an implied promise, except for a disability to make a promise, which the law imposes—a promise made after the •disability is removed can rest upon this benefit and duty as a sufficient consideration. The learned note to Wennall v. Adney (3 B. & P., 247-252), which has been cited and approved by the judges in subsequent cases, requires some qualification or explanation, where it states that “if a contract between two persons be void, and not merely voidable, no subsequent express promise will operate to charge the party promising, even though he has received a benefit from the contract.” This remark is strictly true as to a promise founded upon the contract alone; but the case of usurious loans, which the borrower will be held to pay upon a subsequent promise, shows that when, behind the void, contract, there is a sufficient consideration, it will sustain the subsequent promise. The rule stated in the residue of the note needs no qualification, and has often received express judicial approval: “ An express promise can only revive a precedent good consideration which might have been enforced at law through the medium of an implied promise, had it not been suspended by some positive rule of law; but can give no original right of action, if the obligation on which it is founded could never have been enforced at law, though not barred by any legal maxim or statute provision.” The receipt *613 of money, or of any benefit or advantage, from the promisee, at the request of the promisor, will sustain a promise to repay it, although the money was advanced or the benefit received under a void contract, provided that the consideration for that contract itself was not tarnished with fraud or otherwise invalid. So, when the promisor was, at the time of the receipt of the benefit, under a mere disability to contract to make it good, arising from a rule or maxim of law, and although such a contract could neither be expressed nor implied at the time,, yet a subsequent promise, after the disability is removed, will rest-upon the original benefit, passing over.any invalid contract or promise at the time.
But this rule would not help the case of a subsequent pn> mige to pay for goods sold or delivered to the promisor while a married woman, at common law. The difficulty in such a case was that which was seen in the two cases in the Court of King’s Bench to which I have referred. (2 B. & A., 811; 8 A. & E., 467.) In such cases, at common law, the goods were, in law, supplied to the husband, and the price was a debt owing from him, and never from her. If, .therefore, she gave a note, or other express obligation, it was not only void, but had no consideration. Even if her disability to contract were removed, or did not exist, yet, as long as the rules of the common law as to marital rights remained unchanged, there was nothing from which the law could imply a promise to pay, because the goods supplied to her became her husband’s, and she acquired no beneficial interest in them. Thedaw might imply a promise on.his part to pay for them, but not on hers. For this reason, I agree that, at common law, a promise by a woman, after coverture, to pay for goods supplied to her, or, at her request, while married, could not be sustained.
But the statutes of this State, passed in 1848 and 1849, in respect to the rights of married women, give a different aspect to such a question. (Laws of 1848, p. 308; id., 1849, p. 528.) Since these statutes, any married female may take from any person, other than her husband, and convey, personal property, and it will not be subject to the disposal, or to the debts, of *614 her husband. It is true that these statutes did not remove the disability of married women to make executory contracts; so that any note or obligation, which a married woman should make upon the purchase or acquisition of property, would be void. It is true, also, that the same disability prevented the implication of any contract-on her part to pay for such property. But personal property, sold or conveyed in any manner to a married woman in good faith, since the statute, by any person' .other than her husband, is hers, and not his. It becomes her sole and separate property, and he is neither entitled to it nor bound to pay for it. For this reason, no debt or engagement is implied on his part in consequence of its acquisition. On the other hand, such acquisition is directly beneficial to the married woman: it becomes hers, and not her husband’s: and if it were not that the law disabled her, a promise to pay for it would at once be implied by the law from the fact of its acquisition.
The transactions stated in the complaint, in the present case, occurred in 1852, after those statutes. They are to be taken to be actual and bona fide sales and transfers of property to' the defendant, who-was then a married woman. She became, by-these transfers, the owner of these goods; and although she was incapable of any agreement, express or implied, to pay for them, yet that was merely on account of the existence of a legal rule or maxim. The delivery of the goods to her, at her request, under the statute which made them hers, and not her husband’s, was a good consideration, out of .which an implied promise would at once have arisen, had it not been suspended by the rule of law as to her disability to make an executory agreement. When that disability was removed, it furnished a sufficient consideration for her express promise upon which these actions were founded. The case comes precisely within the rule of the note to Wennall v. Adney; and it is relieved of the difficulty which was fatal to the plaintiff’s, action in the other cases referred to..
The demurrer should have been overruled in the court below, and their judgment should be reversed.
*615 Denio, Ch. J., Selden, Rosekrans, Martín and Wright, Js., concurred. The latter read an opinion, in which he only-considered the last question discussed in the opinion of Judge Balcom, agreeing with him.
Judgment reversed and rendered for plaintiff on the demurrer.