Jewett, J.
 

 The action in this case was brought in the court below upon a policy of insurance against fire. The property insured was a dwelling or tavern-house, a store, and a barn and shed adjoining the store, situated in the village of Durhamville, town of Verona, in the county of Oneida, and on the north side of the Erie canal; the insurance was for five years, from the 12th of March 1838. The property insured was consumed by fire, on the 25th day of August 1840, of which notice was given to the defendants, as required by the terms of the policy. The policy refers to the plaintiffs’ application for insurance “for a more particular description” of the property insured, and as “forming a part of this policy,” and thus, by express words, was made part of the contract.
 
 Burritt
 
 v.
 
 Saratoga County Mutual Insurance Co.,
 
 5 Hill 188;
 
 Jennings
 
 v.
 
 Chenango County Mutual Insurance Co.,
 
 2 Denio 75.)
 

 The plaintiffs were required, by the form of the application with which they were furnished, to state, first,
 
 *442
 
 wh-61® property *which they proposed to have insured was situated; secondly, “how bounded, and the distance from other buildings, if less than ten rods, and for what purpose occupied, and by whom ?” To the first question they answered, “'situated in the village of Durhamville, town of Verona, in the county of Oneida, and on the north side of the Erie canal.” To the second, that “the
 
 nearest building east,
 
 is the dwelling-house occupied by Charles Eggleston, which is about forty-eight feet; on the north, and about five rods distance, is a shop, used in the season of navigation of the canal, for manufacturing setting-poles, and on the west, the
 
 nearest
 
 building to the west end of the barn and shed, is the dwelling-house occupied by Benjamin Frasee, which is about fourteen feet distance; the tavern-stand is occupied,
 
 at present,
 
 by Eliphalet Sears.”
 

 This cause has been tried three times at the circuit On the second trial, it was proved, among other things, tliat there were several other buildings within ten rods of the insured buildings, besides those specified in the application, at the time it was made, of a hazardous character, and for that reason, the plaintiffs were non-suited ; not, however, upon the ground that the answer to the second question amounted to a warranty that there were no other buildings than those stated, within ten rods of the building insured; but upon the ground, that it amounted to the withholding of information, material to the risk, which was called for by the question put. A motion for a new trial was made by the plaintiffs, in this court, founded upon a bill of exceptions taken at the trial, when it was held, that the answer to the question contained in the application: “How bounded, and distance from other buildings, if less than ten rods ?” was not a warranty that there were no othei buildings than those specified, within the distance of ten rods from the premises insured; that “ the call was not for
 
 all
 
 the buildings within ten rods of the appli
 
 *443
 
 cant’s premises; but for the distance of those premises *from other buildings in any direction, if less than ten rods.” That the plaintiffs might very well have understood that the information sought of them by this question, was, how near the buildings, in each direction, if less than ten rods, approached to them; and that their answer showed that they understood the call in that sense — as it stated the distance of their tenements from the buildings
 
 nearest
 
 thereto, in every direction, and did not profess to state
 
 all
 
 the buildings within ten rods. That the term “
 
 nearest”
 
 used by them,
 
 implied
 
 that there were, or might be other buildings more remote, but within the range of ten rods; and that the acceptance of the plaintiffs’ answer, in the form given, by the insurance company, and acting upon it by issuing the policy, showed that the company intended by their interrogatory, to ask for the very information thus obtained; or else they would have called for an explanation and further answer — as they must have seen that the
 
 nearest
 
 buildings only were given, and that those were not stated to be only buildings within ten rods of the premises in question; but virtually disclaimed that the buildings specified were all there were within the distance mentioned, by stating them to be the
 
 nearest.
 
 It was also held, that assuming that the omission to state or describe the other buildings which existed within the ten rods, in the application, to be a concealment of which the company had a right to avail themselves in their defence, the question presented, in the absence of a warranty, would be upon the materiality of the fact concealed, to the risk, and that that question was for the jury, and ought to have been submitted to them; and that, therefore, the ruling of the circuit judge, that the plaintiffs’ right to recover was defeated, upon the ground that the fact of the existence of buildings within ten rods of the insured buildings, at the time of the insurance, not mentioned or described in the plaintiffs’ application,
 
 *444
 
 was of itself conclusive against their recovery, thereby precluding all inquiry into the materiality of the omission to the risk, was erroneous.
 

 decision must be regarded as settling the question, that the answer to the interrogatory in the application, in respect to the distance of the insured premises from other buildings within ten rods, did not amount to a warranty that there were no other buildings within ten rods than those mentioned in it.
 

 In
 
 Jennings
 
 v.
 
 Chenango County Mutual Insurance Co.
 
 (2 Denio 75), where the application .and conditions of insurance were made a part of the policy, and among other particulars, the insured was required, by the
 
 conditions of insurance,
 
 and by the form of the application, to state the “relative situation (of the grist-mill) as to other buildings, distance from
 
 each,
 
 if less than ten rods” — and the answer given was, “ the mill is bounded by space on all sides,” there being a large barn standing within six rods of the mill, it was held to be a warranty that there was no building within ten rods of the mill, which the existence of the barn within that distance falsified, on the ground, that the answer “ that the mill was bounded by space on all sides,” was to be understood and taken as an
 
 affirmance
 
 that there was no building in any direction within ten rods of the mill. Notwithstanding the learned judge, in delivering the judgment of the court in this cause, on the former occasion, was unable to see clearly that it amounted to a warranty, I still think, that it did. For although the insured, in the language of Mr. Justice Bronson, in
 
 Burritt
 
 v.
 
 Saratoga County Mutual Insurance Company
 
 (5 Hill 188), did not, in terms, say, there was no building within ten rods, he must have intended, that his answer should be received and understood by the company, as affirming that fact; and as the answer is to be regarded as parcel of the contract, I could not resist the conclusion, that the insured
 
 agreed
 
 that there was no building within the ten
 
 *445
 
 rods. It is, as a general rule true, that a writing contains all that may fairly be implied from it.
 
 (Potter
 
 v.
 
 Ontario and Liv. Mutual Ins. Co.,
 
 5 Hill 147.) I cannot read the answer to the question, without inferring that the insured meant to *affirm, that there was a space, in every direction from the mill, within the range of ten rods, without any building upon it — and that he intended that the company should so understand it.
 

 I agree, that from the language of the answer to the question in the application, in the case under consideration, it cannot be inferred, that the insured intended tc say or be understood as saying, that there were no other buildings within ten rods than those specified. The implication from the words used is clearly the other way — specifying the
 
 nearest
 
 buildings in each direction, within the ten rods, strongly implied that there were other buildings, not named, within the given distance, although more remote.
 
 [1]
 

 The defendants’ counsel contended at the trial, as he has on the argument here, that even if there was no warranty, the policy was void, because the insured did not disclose the fact, that there were several other hazardous buildings standing within ten rods of the buildings offered for insurance, besides those which the insured described as the “nearest” buildings, varying materially the object of the policy and changing the risk understood to be run. That omission, it is insisted, amounts to a concealment, fatal to the contract.
 

 A policy of insurance is a contract, and is to be governed by the same principle which governs other contracts. When it is said to be a contract
 
 uberrimse jidsi,
 
 this only means that the good faith, which is the basis of all contracts, is more especially required in that species of contract, in which one of the parties is supposed to be necessarily less acquainted with the details of the subject of the contract than the other. But eithei
 
 *446
 
 party may be innocently silent as to grounds open to both, to exercise their judgment upon, for in such a case the maxim,
 
 aliud est celare, aliud tacere,
 
 applies.
 

 In marine insurance, the insured is bound, although no inquiry be made, to disclose every fact material to the-risk, within his knowledge. And although the same general principles * apply to the contract of fire insurance, yet in making the latter, there being no fraud practised, if the applicant for such insurance make a true and full answer to the questions put to him by the insurer, in respect to the subject of insurance, it is enough; he is not answerable for an omission to mention the existence of other facts, about which no inquiry is made of him, though they may turn out to be material for the insurer to know, in taking the risk. He has a right to suppose that the insurer, in making inquiries in respect to particular facts, deems all others to be immaterial to the risk to be taken, or that he takes upon himself the knowledge, or waives information, of them.
 
 (Carter
 
 v.
 
 Boehm,
 
 3 Burr. 1905;
 
 Cornfoot
 
 v.
 
 Fowke,
 
 6 Mees. & Welsb. 358;
 
 Williams
 
 v.
 
 Rawlinson,
 
 3 Bing. 77; Broom’s Maxims 358;
 
 Burritt
 
 v.
 
 Saratoga County Mutual Ins. Co.,
 
 5 Hill 188; 3 Kent’s Com. 372.)
 

 And so, if an insurer enter into a contract of insurance against fire, without making any inquiry of the applicant in respect to the subject of insurance, he has no ground for complaint, if the risk turn out to be greater than he anticipated, unless, indeed, the insured is chargeable with some
 
 misrepresentation
 
 in reference to the nature or extent of the risk. Hence, it has become the general practice of insurers against fire, to guard, in some form, against the consequence of such matters as they deem material to the risk, or which may affect the amount of premium to be paid; sometimes, by conditions or proposals annexed to and made a part of the policy, and sometimes, by requiring the applicant to disclose certain facts in a written application for insurance,
 
 *447
 
 mating it a part of the contract. Experience has, as I think, shown, that the provisions thus adopted have proved generally sufficiently strict and technical to insure a full and true disclosure of all such facts as insurers have thought it important to know; and where the insured has complied with such provisions, I see no ground to make him responsible, as for a concealment, by omitting to communicate to the insurer other facts and circumstances * within his knowledge, of or dinary occurrence, although material to the risk, unless they have been withheld, with an'intention to defraud, there being no condition in the policyrequiring it.
 

 Holding, therefore, as this court did, on the former occasion, that the answer of the insured to the interrogatory contained in the application, in relation to the distance of the buildings offered for insurance from other buildings, was an apt and full' disclosure of all the facts asked for, stated in a clear and intelligible manner, in the sense in which the parties understood the question, puts at rest the question again raised of concealment, founded upon the fact that there were other buildings within the ten rods, not mentioned.
 

 On the trial, the defendants offered to show, that previously to the making of the insurance, the plaintiffs had made preparations for building a large tavern-barn on the premises; that they had brought upon the premises some materials for that purpose, and soon after the insurance was effected, they erected such barn, in the rear, and nearly adjoining the wood-house attached to the tavern-house, without having made any mention of the same in the survey, or giving any notice thereof to the company, then, or at any time afterwards, and that the defendants had no knowledge of the erection of the new barn, until after the first trial of this cause. The evidence being objected to, it was rejected by the judge, to which an exception was taken. It is insisted, that the omission of the plaintiffs to communicate to the defen d-
 
 *448
 
 ants the facts so offered to be proved, relative to tbeir preparation and intention to build tbe barn, at tbe time of making tbe contract, amounted to a concealment of facts material to tbe risk, and thereby rendered the policy void, on tbe ground of fraud.
 

 It would be a sufficient answer to this point to say, that there being no inquiry made of tbe plaintiffs, by the defendants, calling for that information, nor any evidence to show that tbe omission was intentional, or that even knew or suspected *that tbe communication of such facts was material to tbe risk, and especially, as it was not offered to be shown, that the erection of the barn did, in fact, increase the risk, tbe evidence was properly rejected. There is no provision contained in tbe policy, or proposals annexed, prohibiting tbe insured from erecting any new building upon any part of tbeir premises, contiguous to the buildings insured; and I am not able to discover any legal reason, why they might not do so, without affecting their policy, unless some injury actually resulted to the defendants from such act, and none is pretended in this case.
 

 The defendants have, by the terms of tbe policy and proposals annexed, guard.ed against an increase of the risk by any alteration, either in the buildings insured, or the business carried on therein, and if they had deemed it important, they might have inserted a provision, prohibiting the erection of any other building upon the adjacent premises of the insured, during the continuance of the policy. But they have not thought proper to do so, and in my opinion, the policy is not affected by the erection of the barn, as the defendants proposed to show, especially, as it is not pretended, that any injury resulted from it.
 
 (Stebbins
 
 v.
 
 Globe Insurance Co.,
 
 2 Hall 632;
 
 Stetson
 
 v.
 
 Massachusetts Fire Ins. Co.,
 
 4 Mass. 330.)
 

 It was offered, by the defendants, to prove substan
 
 *449
 
 tially the truth of the matter set up in their notice of defence annexed to their plea, that the loss happened through the negligence and carelessness of the plaintiffs’ tenant, in possession of the premises, by making and continuing a fire amongst the chips, near and under the wood-house attached to, and forming a part of, the tavern-house and premises, for two or three days and nights in succession, immediately preceding the day on which the buildings were burned, for the purpose of extracting grease from spoiled meat; and also, that at this time, one Stedman was the tenant, who was a grossly careless person. This evidence was objected to, and refused by the judge, to which an exception was taken.
 

 *There is no clause in the contract, prohibiting a change of the tenant in the occupation of the premises at the time it was made, during the continuance of the policy ; nor was any inquiry made, whether a change of tenant was contemplated. The question put was — “for what purpose .occupied, and hy whom?” and it was correctly and fully answered, that the premises were occupi ed as a tavern stand, and “
 
 at
 
 present,” by Eliphalet Sears. There is nothing indicating that Sears would or should continue the occupant, during the continuance of the insurance; but, on the contrary, if anything may be implied, it may, I think, be implied, that a change of tenants might be made. I see no ground to hold the policy void, on the ground of a change of tenants, although the first was careful and prudent, and the other grossly negligent. It would he unreasonable to imply, that the defendants entered into the contract, with the expectation that the
 
 then
 
 tenant was to continue in the occupati on, during the period of the running of the policy, in the absence of anything of that sort being indicated by the application, policy or proposals.
 

 But another question arises upon the evidence offered, namely, whether a loss occurring from the gross care
 
 *450
 
 lessness and negligence of the insured, his servants or others, is within this policy. There can be no doubt, that one of the objects of insurance against fire is to protect the insured from loss, as well against his own negligence, as that of his servants and others, and therefore, the simple fact of negligence in either, however great in degree, has never been held to be a defence in an action on such policy.
 

 The rule is well established, not only in the English, but in the general American insurance law ; that in the absence of all fraud, the
 
 proximate
 
 cause of loss, only, is to be looked to; and the same rule now prevails in marine insurance.
 
 (Waters
 
 v.
 
 Merchants’ Louisville Ins. Co.,
 
 11 Peters 213;
 
 Columbia Ins. Co. of Alexandria
 
 v.
 
 Lawrence,
 
 10 Id. 507;
 
 Delano
 
 v.
 
 Redford Ins. Co.,
 
 10 Mass. 355;
 
 Patapsco Ins. Co.
 
 v.
 
 Coulter, 3
 
 Peters 222;
 
 Williams
 

 v.
 
 Suffolk Ins. Co.,
 
 3 Sumn. 276; *
 
 Copeland
 
 v.
 
 N. E. Marine Ins. Co.,
 
 2 Metc. 432;
 
 Shore
 
 v.
 
 Bentall,
 
 7 B. & C. 798, note
 
 b; Busk
 
 v.
 
 Royal Exchange Assurance Co., 2 B. &
 
 Ald. 73;
 
 Shaw
 
 v.
 
 Robberds,
 
 6 Ad. & E. 75; 3 Kent’s Com., 5th ed., p. 300, note
 
 c;
 
 p. 307, note
 
 e;
 
 p. 374, note
 
 b.)
 

 Another ground of defence is, that the insured premises, by the acts mentioned of the tenant in possession, were thereby appropriated, applied or used, to or for the purpose of carrying on, or exercising therein, a trade, business or vocation, which, according to the conditions, class of hazards, or rates to the policy annexed, or referred to, would increase the hazard, without the consent of the defendants, as specified in the policy, and that, therefore, the policy ceased, and was of no force or effect, at the time of the fire.
 

 It is true, that this policy is subject to such a provision, but I do not think, that the evidence proposed ■would tend to show such an appropriation of the premises. There is nothing in the conditions, class of hazards, or rates annexed to the policy, or referred to,
 
 *451
 
 indicating that the extracting of grease, in the manner that it was offered to he shown that the tenant did, would increase the hazard, though it probably did; and it could, perhaps, very easily have been foreseen that it would. But however that may be, there is no ground to pretend, that the fire was built for anything beyond a temporary purpose; and it is clear, that the provision named, only points at a
 
 permanent
 
 alteration of his business. There is no claim, in this policy, which amounts to an
 
 express warranty
 
 that nothing, at any time, however temporarily, should be done, besides the keeping of a tavern; and there are no facts, nor is there any rule of legal construction, from which such an implied warranty can be raised.
 
 (Shaw
 
 v.
 
 Robberds,
 
 6 Adolph. & Ellis 75;
 
 O’Neill
 
 v.
 
 Buffalo Fire Ins. Co.,
 
 3 N. Y. 123.)
 

 Upon the whole, I am of opinion, that there is no error in the judgment of the court below, and that it should be affirmed.
 

 [1]
 

 See Masters v. Madison County Mutual Ins. Co., 11 Barb. 624.