MILO D. SMITH, RESPONDENT, *v.* THE HOME INSURANCE COMPANY, APPELLANT.

*Overvaluation of a house in an application for a policy of insurance, when not a breach of warranty — a breach of warranty as to one class of property, separately insured, does not avoid the policy as to other pieces — an applicant is not bound to disclose facts not called for by any inquiry in the blank application furnished by the company — construction given to a clause providing that any person other than the assured who procured the policy shall be deemed the agent of the assured — when an agreement by an adjuster of the company is a waiver of its right to demand proofs of loss — construction of a clause requiring proofs of loss to be signed by the nearest magistrate or notary — proof of a breach of warranty not set up in the answer is inadmissible.*

The defendant, on October 21, 1878, by its policy, insured the plaintiff against loss or damage by fire on two dwelling-houses, his barns, and the produce therein, and his farming utensils, carriages, horses and cows, separate amounts being placed upon each. The policy provided that the application, survey, plan and description were considered part of the contract and a warranty by the assured, and that any false representation by the assured of the condition, situation or occupancy of the property, or any omission to make known every fact material to the risk, or an overvaluation or any misrepresentation whatever, either in the written application or otherwise, would render the policy void.

Upon the trial of this action, brought to recover the damages sustained by the burning of the barns and their contents on December 30, 1878, the defendant contended that there was an overvaluation of the dwelling-house insured which avoided the policy. The valuation of the house, as stated in the policy, was $1,400, while the evidence tended to prove that its value did not exceed $1,000.

*Held,* that the value, as stated in the application, was not so excessive as to require the conclusion, as matter of law, that it was an overvaluation within the meaning of the warranty, and the question as to whether it was designedly excessive should be decided by the jury and not by the court.

That, as the house was not burned, and was not the subject of claim in this action, a breach of the warranty as to it would not vitiate the policy as to the property separately insured.

It appeared by the evidence that the plaintiff, having made complaint against a person who was convicted of a crime, he was threatened by the father of the person so convicted that he would fix him (the plaintiff) and that, as a consequence, he was advised by others to get his property insured; that he went to Randall, a solicitor of insurance for an agent of the defendant, and told him what had been said to him of the threats and expressed his desire for the insurance, and that Randall thereupon proceeded to obtain it. The defendant contended that the plaintiff was required to communicate the circumstances which gave him such apprehension or fear to the defendant, by statements in the application or otherwise, and that the disclosures of them to Randall did not have the effect of notice to the company, and requested the court to charge that if the plaintiff believed, when he applied for the policy, that there was danger of an incendiary burning of his property, and did not disclose the fact in his written application, he could not recover.

*Held,* that the court properly refused to so charge.

That, as the blank for the application was provided by the defendant's agent, to be filled in by answers to the questions it contained, and as the plaintiff was not called upon by any inquiry in it to disclose the threats, he was not required to insert a statement as to them in the application.

That, although the policy provided that any person, other than the assured, procuring the insurance to be taken, was to be deemed the agent of the assured, it should be held, in this case, that the solicitor was employed by the agent of the defendant to do this service and obtain the facts and information upon which the insurance was to be made, and that as his relation was apparently that of a representative of the company, and was so understood by the plaintiff, the communication in respect to the matter in question, made to him by the plaintiff, was to be treated as made to the agent of the defendant for the purposes of the question involved.

The defendant claimed that the proofs of loss were not furnished within the requisite time, and that they were insufficient.

*Held,* that as the evidence, as to an interview with the agent who procured the policy for the plaintiff, and with an adjuster of the defendant who said that in the course of two weeks he would come and settle and arrange with him, was sufficient to permit the jury to find that performance of the condition requiring the proofs of loss was waived, the claim could not be sustained.

The defendant objected, to the proofs of loss furnished, that the certificate of the notary public was not in accordance with the requirements of the policy, as not being the certificate of the magistrate or notary public residing nearest the place of the fire. There was one justice of the peace and two notaries public

in that locality. The notary, whose place of business was a little nearer the fire than that of either of the other two, was a large creditor of the assured, partly secured by mortgage, and for that reason declined to make the certificate.

*Held,* that, without determining whether that necessarily rendered him ineligible, the reason alleged was such as not to make his certificate essential within the meaning of the provision in the policy.

The places of residence of the other notary and the justice were in opposite directions from the place of the fire, and something over two miles from it, the difference in distance to them being small and requiring actual measurement to determine it.

*Held,* that, in view of the small difference, in proximity, of the two places of residence by the usually traveled route, and the fact that in a direct line that of the notary might, upon the evidence, be deemed as near at least as that of the justice, no breach of this condition of the policy was shown.

The defendant offered, but was not permitted, to prove that at the time the plaintiff obtained the policy in question, a portion of the property insured by it was covered by a policy of insurance issued to him by another insurance company, which he then held; the plaintiff having stated in his application for the insurance that there was no other insurance on the property.

*Held,* that as no such defense was alleged in the answer, the evidence of such breach of warranty was not admissible for the purpose of establishing the invalidity of the policy.

APPEAL by the defendant from an order of the Erie Special Term, denying a motion made on a case and exceptions for a new trial.

The defendant, on October 21, 1878, by its policy, insured the plaintiff against loss or damages by fire on his dwelling-house No. 1, $900; dwelling-house No. 2, $200; barns Nos. 1, 2 and 3, $700; produce therein, $400; farming utensils, $50; carriages, etc., in barns, $100; horses, $300; and cows, $500. On December 30, 1878, the barns and contents were destroyed by fire. This action was brought upon such policy, tried at the Wyoming Circuit, and a recovery was had by the plaintiff.

*Augustus Harrington,* for the appellant.

*I. Sam. Johnson,* for the respondent.

BRADLEY, J.:

The policy was issued by one Farman, the defendant's agent, at Warsaw, N. Y., upon an application obtained by one Randall, acting as solicitor. In the application signed by the plaintiff is his covenant that the statements, valuation, description and survey in it are true and correct, and are submitted as his warranty and a basis for the

desired insurance. And the policy provides that such application, survey, plan and description, were considered part of the contract, and a warranty by the assured, and that any false representations by the assured of the condition, situation or occupancy of the property, or any omission to make known every fact material to the risk or an overvaluation or any misrepresentation whatever, either in the written application or otherwise, would render the policy void.

It is contended that there was an overvaluation of the dwelling-house insured for $700, which vitiated the policy. The valuation of this house, as stated in the application, was $1,400, while the evidence tended to prove that its value did not exceed $1,000. The mere statement of value of property is ordinarily a matter of opinion. And although in this case the application containing it, is part of the contract of insurance, and the statements contained in it, warranties, it is difficult to apply it strictly to those which are necessarily matters of opinion so as to make the validity of the policy dependent upon the fact that the opinion of the assured was correct. If that were so the rule would require such a result in all such cases upon the finding of the jury that the statement in that respect is in excess of value of the property insured, although the fact should exist in a conflict of evidence. Our attention is called to no case declaring that doctrine to the extent claimed for it by the defendant's counsel. And in analogy to the familiar rule on the subject it would seem that the mere statement of that which is necessarily, from its nature, matter of opinion, is not strictly within the term warranty as applied even to a contract of insurance. (*Van Epps* v. *Harrison*, 5 Hill, 69; *Dacey* v. *Agr'l Ins. Co.*, 21 Hun, 83.) And that the statement of value in such an application is not effectual as an overvaluation to defeat liability unless it is grossly or designedly excessive. (*Redferd* v. *Mut. Fire Ins. Co.*, 38 Up. Can. [Q. B.], 538; *Ins. Co. of N. Am.* v. *McDowell*, 50 Ill., 120.) In this case the value stated in the application is not so excessive as to require the conclusion, as matter of law, that it was an overvaluation within the meaning of the warranty, but the question in such case whether it was designedly excessive on the part of the plaintiff may be properly for the jury to bring it, as a false representation, within the warranty. But this house was not burned and it is not made the subject of claim in this action. And although in some of

the States it is held that, where a policy of insurance covers different kinds of property, the contract is entire although the valuations and amounts of insurance are severally applied to the different classes of property, and that a breach of the warranty as to any portion of the subject of insurance vitiates the policy as a whole, especially when the consideration expressed is entire; that, however, is not the doctrine in this State as applied to contracts of insurance. And this is the general rule applicable to contracts. (*Merrill* v. *Agricultural Ins. Co.*, 73 N. Y., 452; *Schuster* v. *Dutchess Co. Ins. Co.*, 102 id., 260; *Woodward* v. *Republic Fire Ins. Co.*, 32 Hun, 365, 373.)

The question of the effect of the policy upon the statement of excessive value of the house, if made fraudulently or with evil intent for any purpose, requires no consideration. While the use to which the fact would be entitled, if found, was a question of law for the court; whether or not such was the fact, was for the jury to find. No request was made to submit it to them, and no exception appears by the record presenting the question in that view.

It appears by the evidence of the plaintiff that, having made complaint against a person who was convicted of a crime, he was threatened by the father of the person so convicted that he would fix him (plaintiff); that as a consequence he was advised by others to get his property insured; and that the plaintiff went to Randall, told him what had been said to him of the threats, and expressed his desire for the insurance, and thereupon Randall proceeded to obtain it. And another witness testified that after the fire, and in the presence of the agent of the defendant, its adjuster and Randall, the plaintiff said he had stated to Randall that he wanted to get the property insured, because he was afraid some one would burn him out, or he did not know but what his buildings might be burned. And another witness testifies that the plaintiff then said he was, for that reason, induced to obtain the insurance.

It is contended that the plaintiff was required to communicate the circumstances which gave him such apprehension or fear to the defendant, by statement in the application or otherwise, and that the disclosure of them to Randall did not have the effect of notice to the company. Reference has already been made to the provision of the policy which it is claimed imposed upon the assured the duty to do so for its support as a contract of insurance.

The rule in marine insurance requires communication to the insurer of any information the applicant for insurance has which may be material to the risk. And in the *New York Bowery Fire Insurance Company* v. *New York Fire Insurance Company* (17 Wend., 359) the same rule was held applicable. That, however, was a case of reinsurance. And the court held that the omission of the defendant, on application to the plaintiff in error for such reinsurance, to disclose to the latter information received relating to the character of the person whose property was insured, defeated the right of recovery by the reinsured company, because such information may have been treated as material to the risk assumed. While such may be the doctrine relating to contracts of reinsurance, it is not to the same extent applicable to those of original insurance against loss by fire. · In the latter it is usual, by the application, or by the condition of the policy, to expressly call upon or require the assured to make disclosures. And so far as he acts in good faith, he is required only to correctly comply with the terms so prescribed. (*Burritt* v. *Saratoga County Mut. Fire Ins. Co.*, 5 Hill, 188, 192; *Gates* v. *Madison, etc., Ins. Co.*, 5 N. Y., 469, 475.) .

The question in the case at bar was raised by motion for nonsuit. And the court was requested and declined to charge that if the plaintiff believed, when he applied for the policy, that there was danger of an incendiary burning of his property, and did not disclose that fact in his written application, he could not recover, and exception was taken. It does not appear that any threat to burn the plaintiff's property or to do him any injury was made, other than that imported by the purpose expressed to fix him. This did not necessarily increase the hazard of the insurance of the plaintiff's buildings, but inasmuch as he deemed it prudent, by reason of such threat to protect himself in that manner against loss, it is said that the information that the threat to fix him was made must be deemed material to the risk. Assuming it was so, the plaintiff was not called upon by any inquiry embraced in the application to make the disclosure of it. And the application in blank was provided by the defendant's agent to be filled by answers to questions it contained, to furnish the basis of the insurance. He was not required to insert it in the application, and, therefore, the exception to the refusal to charge as requested in that respect was not well taken. (*Browning*

v. *Home Ins. Co.*, 71 N. Y., 508.) And in the absence of fraud, a condition like that in the policy in question, is not ordinarily violated by the failure of the insured to disclose facts in respect to which no inquiry is made. (*Id.*) But a concealment designedly made of any matter material to the risk may have the effect to vitiate the policy. And whether such was the design of the assured is usually a question for the jury. In this case the evidence tends to prove that the plaintiff did fully disclose this threat to Randall, the solicitor, who filled out and took the application for the insurance, and the only person with whom the plaintiff had any communication or transaction in reference to taking the insurance, and the policy was delivered to him by Randall, who had been for considerable time acting as such solictor under the employment of the defendant's agent, and for that purpose was supplied with applications in blank, and had procured quite a large number of them to be filled, upon which policies had been issued by the defendant, through his agent, who had authority, quite general in character, to take applications and issue policies, using blanks having subscribed to them the names, as such, of the president and secretary of the defendant. (*Angell v. Hartford Fire Ins. Co.*, 59 N. Y., 171.) If it had appeared that the defendant was advised or charged with notice, when the policy was issued, that Randall had taken the application, his acts would be deemed adopted so far as they came within the scope of agency.

It is, however, said that, in the transactions of and attending the taking of the application, Randall was the agent of the assured and not of the company, because the policy provides "that any person other than the assured who may have procured this insurance to be taken by this company, shall be deemed to be the agent of the assured named in this policy, and not of this company under any circumstances whatever, or in any transaction relating to this insurance." The application of a provision declaring the agency for the assured of one authorized to act for the company is qualified, and the rule in that respect applied in *Rohrbach* v. *Germania Fire Ins. Co.* (62 N. Y., 47) and *Alexander* v. *Germania Fire Ins. Co.* (66 N. Y., 464) is limited to those fairly within the situation presented by them. (*Whited* v. *Germania Fire Ins. Co.*, 76 N. Y., 415.)

In the first of these cases the breach was the failure of the insured to correctly or fairly answer a question in the application

which was made part of the contract of insurance; and in the other case the breach was of an express provision of the policy in respect to the occupancy of the building insured, while here there was no inquiry in the application calling for it, nor any specific provision in the policy violated by the omission to make the disclosure referred to. And assuming that, in the act of submitting the inquiries and taking the answers embraced in the application, the person doing it may be treated as the agent of the assured by virtue of the clause before quoted, such relation would not be carried by it so far as to cover communications made to him of other matters deemed material to the risk, notwithstanding the general provision of the policy relating to the effect of omission to make known facts of that character; but in such case, and for the purposes of the disclosure made, the person so acting for the company would be deemed its agent. (*Beebe* v. *Hartford, etc., Ins. Co.*, 25 Conn., 51; 65 Am. Dec., 553; *Van Schoick* v. *Niagara Fire Ins. Co.*, 68 N. Y., 434.) And in view of the fact that the solicitor was employed by the agent of defendant to do this service, and obtain the facts and information upon which the insurance was to be made, and as his relation was, apparently, as that of the representative of the company, and so understood by the plaintiff, we think the communication in respect to the matter in question, made to him by the latter, may be treated as made to the agent of the defendant for the purposes of the question involved, without reference to the inquiry whether or not the defendant otherwise than through its relation with its agent, had any knowledge that Randall was so employed and acting, inasmuch as the issuing of the policy was an apparent adoption of his act in obtaining the application. (*Bodine* v. *Exchange Fire Ins. Co.*, 51 N. Y., 117; *Van Schoick* v. *Niagara Fire Ins. Co.*, 68 id., 434; *Allen* v. *St. Louis Ins. Co.*, 85 id., 474; *Chase* v. *People's Ins. Co.*, 14 Hun, 456; *Partridge* v. *Commercial Fire Ins. Co.*, 17 id., 95; *Davis* v. *Lamar Ins. Co.*, 18 id., 230.) The inefficiency of the exceptions relating to the alleged omission to disclose the threat made to fix the plaintiff does not, however, necessarily rest upon the proposition last stated, but it is sufficient that the court could not, as matter of law, properly hold that it was designedly concealed by the plaintiff from the defendant.

Another ground of defense alleged is, that the proofs of loss were not furnished within the requisite time, and that they were insufficient. The loss occurred December 30, 1878, and the proofs were delivered to the defendant June 4, 1879. This was not within the time required by the policy, which provides that the assured, as soon after the loss as possible, should render a particular account of the loss, etc., signed and sworn to by him. This was a condition precedent, and the plaintiff was not entitled to recover unless the strict performance of the condition was in some manner waived by the defendant. And to establish such waiver, the plaintiff gave evidence tending to prove that the day following the fire he called uopn and informed the defendant's agent, who said he would and did notify the company of the loss and write the adjuster, and said the latter would come and look over and settle the loss; that within a week after this the agent notified him that Morgan, the adjuster, would come on the thirteenth of January to adjust the loss; that he did come to the plaintiff's house on that day, and after making inquiries and examination, and a memorandum of the property and its value as he ascertained it, the adjuster said to the plaintiff that in the course of two weeks he would come and settle and arrange the matter with him, and went away. He did not return. And that afterwards the plaintiff made inquiries of the agent on the subject several times, and finally in March the defendant's agent told him that the adjuster was in Pennsylvania and on his return he would stop there and fix the matter. And that in reference to the matter of proofs of loss, the agent said to the plaintiff that he did not know whether they were necessary, but that he had better wait until the adjuster came or was heard from before he did anything; that he did not see nor hear further from the adjuster until about April tenth, on his way to Warsaw, when the plaintiff passed the adjuster in the road, and asked him if he intended to settle and pay the loss, and the latter said he was acting under instructions from the company, and the plaintiff thereupon informed him that he was going to Warsaw to do something about it. The plaintiff had before been advised by the agent that it would be necessary for him to make proofs of loss before he could take proceedings against the company to collect. And after the last interview with the adjuster the plaintiff, with some interruptions to which it is unnecessary to refer, proceeded to

have the proofs prepared, which was done, and sworn to by the plaintiff April seventeenth and the certificate of the notary public annexed was dated April twenty-sixth, and he sent them to New York by a person going there who delivered them to the company. There is some conflict of evidence as to what was said at the plaintiff's house on January thirteenth, and at the interview in April, but the jury were permitted to find the facts as before stated. It is, however, contended on the part of the defendant, that there was no evidence to justify the conclusion of waiver. And, at all events, that there was no excuse for the delay in furnishing proofs, which occured after the April interview with the adjuster. If this condition precedent was waived on January thirteenth, the question of laches after that time in fusnishing proofs of loss is not necessarily in the case, because when its performance is once effectually waived its requirement ceases.

In view of what took place at interviews with the defendant's agent prior to that, and on July thirteenth, as testified to by the plaintiff, there was sufficient to permit the jury to find that the performance of the condition, requiring proofs of loss, was waived The adjuster represented the company, and so far as appears had ample power to settle the claim. The local agent of the defendant was present with him on the occasion, when, as the plaintiff says, the adjuster promised to return in two weeks and settle and arrange the matter. This, upon the assumption that the plaintiff's statement was adopted as true, might be treated as an unqualified recognition of the plaintiff's right to payment, and as a promise to settle the claim, and thus as an obviation of the necessity of any further action on his part. (*Van Allen* v. *Farmers' Joint Stock Ins. Co.*, 10 Hun, 397; affirmed, 72 N. Y., 604; *Fowle* v. *Springfield Ins. Co.*, 20 W. D., 55; *Craighton* v. *Agr'l Ins. Co.*, 39 Hun, 319.) The plaintiff, however, in June did furnish to the defendant proofs of loss, which were retained without objection until July 21, 1879, when the defendant, by its agent, who was the adjuster before referred to, wrote a letter to the plaintiff, saying that the proofs of loss were not satisfactory and could not be accepted as such; that it was not a particular account of the loss, and did not show the actual cash value of the several classes of property destroyed, and that the certificate of the notary public was not in accordance with the requirements of the policy, and was not the certificate of the

magistrate residing nearest the place of the fire. It will be observed that the objection by this letter is not specifically made that the proofs were not furnished to the company within the time required. Nor were they returned to, or their return requested by, the plaintiff for correction. The retention of them by the company from June fourth to July twenty-first, without objection, is some evidence, and enabled the jury to conclude that the proofs had been treated as satisfactory at some time prior to that day, and therefore that the defect (if any) in them, in any particular respect, was waived by the defendant, as well as in respect to the time they were received by it. (*Prentice* v. *Knickerbocker Ins. Co.*, 77 N. Y., 483; *Brink* v. *Hanover Ins. Co.*, 80 id., 109; *Titus* v. *Glens Falls Ins. Co.*, 81 id., 410.) And by reference to the cases last cited it may be observed that the rule requiring a technical estoppel or, after the expiration of the prescribed time to furnish proofs, a new consideration to support waiver in that respect no longer prevails in this State, and in that respect *Ripley* v. *Ætna Ins. Co.* '30 N. Y 136) is not followed.

The waiver, however, could be applicable only as to the matters of which the defendant was advised by the papers themselves, at least until it had a reasonable time to ascertain the essential facts not furnished by their inspection. The defendant cannot be supposed to have known whether the notary public, whose certificate was annexed, was within the locality required by the condition, which provided that the assured should "produce a certificate under the hand and seal of a magistrate or notary public nearest to the place of the fire, and not concerned in the loss as a creditor or otherwise or related to the assured." There was one justice of the peace and two notaries public in that locality.

Blodgett was a notary public, whose place of business was a little nearer the place of the fire than that of either of the other two, but he was a large creditor of the assured, partly secured by mortgage, and for that reason he declined to make the certificate. And, without determining whether that necessarily rendered him ineligible, we think the reason was such as not to make his certificate essential within the meaning of the provisions of the policy as it might be construed. (*Dolliver* v. *St. J. F. and M. Ins. Co.*, 131 Mass., 39.) The places of residence of the other notary and the

justice were in opposite directions from the place of the fire, and something over two miles from it; and the difference in distance to them was small and required actual measurement to determine it. The assured obtained the certificate of the notary public, whose residence was a little farther, as appeared by measurement, by the usual traveled road, while it does not appear which was nearer by an air line. They were merchants, and the store of the justice was nearer than his house; and was nearer than the notary's store, which was further than his house. The former did his official business at his store, and the other did his at his store and house, as occasion required. While it would have been proper to have been governed by their places of business in making the selection in reference to distance from the place where the fire occurred, it was not necessarily required that they should have been adopted in preference to those of residence. They respectively resided near their places of business. And in view of the small difference in proximity of the two places of residence by the usually traveled route, and the fact that in a direct line that of the notary may upon the evidence be deemed as near, at least, as that of the justice, we think there is no fair opportunity to effectually charge a breach of this condition precedent. (*Turley* v. *North American Ins. Co.*, 25 Wend., 374.) The plaintiff testified that he thought the residence of the notary was nearer than that of the justice. And the defendant's objection in the letter referred to, by its terms, had relation to the place of residence of the magistrate or notary who should have made the certificate. But after this objection was made, the plaintiff procured the certificate of the justice and sent it forward to the defendant; and although this was not done until October following, the certificate was retained by it without further objection. And if the fact became essential, the jury were permitted, within the doctrine relating to proofs of loss, before stated, to find that the delay in its production was waived by the defendant. It is, therefore, unnecessary to determine whether the construction of the provision in question is necessarily such as to require the production of the certificate with the proofs of loss, as soon after the fire as possible. (*Cammell* v. *B. and T. Fire Ins. Co.*, 39 Up. Can. [Q. B.], 1.) If these views are correct, the motion for nonsuit was properly denied, and the several exceptions to the charge and

to the refusals to charge, involving like consideration, were not well taken.

The defendant offered to prove that at the time the plaintiff obtained the policy in question, a portion of the property insured by it, was covered by a policy of insurance issued to him by another insurance company, and which he then held. The evidence was excluded and exception taken. The plaintiff had stated in the application, in answer to an inquiry there, that there was no other insurance on the property. And the evidence was evidently offered to show a breach of the warranty in that respect. The evidence was competent for that purpose and admissible unless an allegation of the breach in the defendant's answer was requisite to permit the proof to be made. And, although, the truth of the answer was in the nature of a condition precedent, its proof by the plaintiff was not essential to his cause of action, but the breach of warranty was matter to be proved on the part of the defense. And although the question may not be free from doubt, in view of the general allegation of performance required in the complaint, we are inclined to think it is matter to be pleaded as a defense, and that such is the better rule.

No such defense is alleged in the answer, and for that reason we think the evidence offered was not admissible for the purpose of defeating the validity of the policy as for breach of warranty. ( *Weed* v. *Schenectady Ins. Co.*, 7 Lans., 452; *Piedmont, etc., Life Ins. Co.* v. *Ewing*, 92 U. S., 377.)

The offer to prove by the defendant's agent that he had sent to the company no papers connected with insurance policies containing the name of Randall, or any information in regard to him was probably admissible on the question whether the defendant had any knowledge that he was acting as solicitor in the business, and to overcome inferences in that respect, but in the view taken the exclusion of the evidence could not prejudice the defendant.

The evidence offered to prove the cost of construction of the barns in October, 1878, may have been improperly excluded in view of the provision of the policy, that the cash value of property destroyed should not exceed the cost of replacing it at the time of the fire, if the evidence had not already been given by the same witness of the cost of rebuilding the barns at the time of the fire, which rendered the evidence so offered wholly unimportant. And

so far as it may have had a bearing upon the value as of the time of the insurance, it was covered by the evidence of the witness to the effect that the cost would have been no different on that day in October, than at the time of the loss. We have examined all the other exceptions taken at the trial and think there was no error to the prejudice of the defendant in any of the rulings to which they were taken, and that the verdict was supported by the evidence.

The order denying the motion for a new trial should be affirmed.

BARKER, P. J., concurred.

Order affirmed, with costs.